UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA,

       Plaintiff,

v.                              Case No. 8:15-cv-1125-T-33MAP

JAMES M. HEPTNER; HILLSBOROUGH
COUNTY TAX COLLECTOR; TLGFY,
L.L.C.; CATALINA TAX CO.,
L.L.C. SERIES 1; ITS BILLING,
INC.; and SWEETWATER CREEK
PROPERTY OWNERS ASSOCIATION,
INC.,

       Defendants.

_____/

**<u>ORDER</u>**

This matter comes before the Court pursuant to Defendant ITS Billing, Inc.'s Motion for Summary Judgment (Doc. # 33), which was filed on February 12, 2016.  Plaintiff IRS also filed a Motion for Summary Judgment (Doc. # 35) on February 26, 2016.  The Motions are ripe for the Court's review.  For the reasons that follow, the Court grants the IRS's Motion to the extent that it finds that the IRS is entitled to a judgment in its favor against Heptner based on Heptner's failure to pay income taxes.  However, on the issue of lien priority, the Court grants summary judgment in favor of ITS Billing, because Heptner executed a purchase money mortgage in favor of ITS Billing, which takes priority over the IRS's federal tax lien.

I.   **Background**

    A.   **Heptner's Mounting Tax Liability**

Defendant James Heptner is a disbarred attorney residing in Tampa, Florida. (Heptner Dep. Jan. 27, 2016, Doc. # 35-4 at 55). He attended the tax program at the University of Florida, but did not obtain an LL.M. in taxation because he "didn't have a knack for tax." (Id. at 25).   On February 26, 2004, Heptner filed untimely federal income tax returns for the years 1993 through 1996, and 1999 through 2001, but he failed to pay the taxes he reported on those returns. (Livingston Decl. Doc. # 35-2 at ¶ 3).   In addition, Heptner filed untimely returns for the years 2010 and 2012, but he did not make full payment of his tax liabilities. (Id.). Heptner made installment payments to the IRS from 2005 to 2009, but he fell behind and "was unable to pay." (Heptner Dep. Jan. 27, 2016, Doc. # 35-4 at 21).

On September 28, 2004, the IRS filed a notice of federal tax lien in the official records of Hillsborough County, Florida against Heptner for the assessments made against him for the years 1993 through 1996, and 1999 through 2001. (Livingston Decl. Doc. # 35-2 at ¶ 13).   A notice for those years was re-filed on December 30, 2013. (Id.).   Thereafter, on December 18, 2014, the IRS filed a notice of federal tax

lien in the official records of Hillsborough County, Florida against Heptner for the assessments made against him for the years 2010 and 2012. (<u>Id.</u>).

As of March 16, 2016, Heptner's tax liability amounts to $250,829.14, and continues to accrue interest and penalties. (<u>Id.</u> at ¶ 7).  Heptner agreed that, with respect to his tax liability, "the numbers seem accurate" and he has "no evidence to show it's not accurate." (Heptner Dep. Jan. 27, 2016, Doc. # 35-4 at 16).  Heptner explains that: "I was in business for myself and not a good money manager." (<u>Id.</u> at 13).

### B.   <u>Heptner's Employment with Damien Freeman</u>

Heptner practiced law from 1984, until 2001. (<u>Id.</u> at 11). Heptner became employed as a legal advisor and in-house counsel by Damien Freeman, an entrepreneur, around 2002, and continued to provide legal services until 2009.  (Freeman Dep. Oct. 8, 2015, Doc. # 35-6 at 113-119).  Freeman is a high school graduate who, by the age of 24, had 225 employees and $100 million in corporate sales. (<u>Id.</u> at 10).  Freeman owns various corporations, including ITS Billing, Inc. and YPD, Inc. (<u>Id.</u> at 28, 36).

Freeman understood that Heptner lost his law license because "he got into cocaine," but notwithstanding his disbarment, utilized Heptner for the provision of legal

services. (Id. at 118, 124, 234).[1]   Freeman paid Heptner

approximately $50,000.00 per year and provided regular raises.

(Id. at 123).   Heptner contends that he was also entitled to

a form of profit sharing and distributions from YPD as well as

litigation bonuses. (Heptner Dep. Jan. 27, 2016, Doc. # 35-4

at 45, 67-68).

    Freeman was Heptner's "direct boss" and the two ate lunch

together every day. (Freeman Dep. Oct. 8, 2015, Doc. # 35-6 at

119).   Freeman and Heptner formed a friendship and talked

about everything, including Heptner's complex divorce and

custody battle over his daughter. (Heptner Dep. Jan. 27, 2016,

Doc. # 35-4 at 79-80).

### C.   Acquisition of the Relevant Property

    Heptner was residing in a condominium in Tarpon Springs,

Florida, but desired to relocate to West Tampa, to a home near

his daughter's school. (Id. at 69). Freeman indicates that

---

[1] See The Florida Bar v. Heptner, 887 So. 2d 1036, 1045
(Fla. 2004)("Heptner has been violating the rules for over ten
years, while injuring numerous clients. . . . An attorney who
practices law in this manner is a danger to his clients and
the public, and should be disbarred before causing further
harm. . . . Heptner involved his client in his felonious
activities regarding cocaine. Also, he continued to practice
law while suspended which, on its own, indicates that
disbarment is the appropriate sanction. Further, Heptner has
a noteworthy disciplinary history.  He is also guilty of
contempt and violating several rules.").

Heptner approached him "about obtaining a loan to buy a house." (Freeman Aff. Doc. # 33-1 at 2, ¶¶ 4-5). Freeman explains, "at that time, Heptner was under pressure because he was divorcing his wife, and . . . unless he could show the divorce court that he resided near his daughter's school, he would lose visitation time with his daughter." (Id.).

Freeman explains that, "Being a father of two daughters myself, I sympathized with Heptner and agreed that my company, ITS [Billing], would provide him a loan to buy the house in June 2005." (Id. at ¶ 6). "In addition to providing a $15,000 down payment, ITS [Billing] submitted an official check for $430,825.99 to the title company on June 6, 2005." (Id. at ¶ 7). Furthermore, Freeman contends that he loaned Heptner $100,000.00 to remodel and renovate the home. (Freeman Dep. Oct. 8, 2015, Doc. # 35-6 at 146, 321).

Freeman maintains that he furnished these funds to Heptner as a loan so that Heptner (who has poor credit) could purchase a home and "stand a chance to be part of his daughter's life." (Id. at 149). Heptner tells a different story. He contends that at least a portion of the funds ITS Billing provided to purchase the home were a "payment [of] mon[ey] already earned from [the] YPD distributions." (Heptner Dep. Jan. 27, 2016, Doc. # 35-4 at 45). Heptner indicates

that YPD was "a phenomenal success" grossing $7 million by 2005, and that Heptner had been promised a percent of those proceeds pursuant to a "handshake" deal with Freeman. (Id. at 61, 67-68).

### D. Heptner's Web of Litigation

Although it is Heptner's theory in this case that Freeman did not loan him money to purchase the home and instead, the home was purchased (at least in part) as compensation, Heptner testified differently in June of 2005, in the context of his divorce case, which was litigated in Pasco County, Florida:

> Q: Okay. Mr. Heptner, please state your address for me please, if you would?
> A: 2105 Crosswater Drive, Tampa, Florida, 33615.
> Q: How long have you lived there?
> A: Since last week.
> . . . .
> Q: Who owns that home?
> A: I do.
> Q: Is the deed in your name?
> A: Yes.
> **Q: And is it free and clear?**
> **A: No.**
> Q: How much did you pay for the home?
> A: $442,000.
> . . . .
> Q: How much did you put down on the house?
> A: Like $15,000.
> **Q: And where did you obtain that money?**
> **A: From a loan from one of my employer's companies.**
> **Q: Is there paperwork to document that loan?**
> **A: Yes.** It has handled by a title company.
> Q: And did you finance the balance of the purchase price?
> A: Yes.

```
Q:    And is it all in one mortgage or is there a
      secondary financing?
A:    Just a single mortgage.
Q:    And who is that mortgage with?
A:    I think it's ITS [Billing].
Q:    Did you go through a mortgage broker?
A:    No.
Q:    How did you arrange the financing?
A:    Through my employer.
Q:    So it's a hundred percent financing?
A:    Yes.
Q:    And does ITS [Billing] know that?
A:    Yes.
Q:    Did you fill out a financial statement or an
      earnings income statement in order to qualify
      for the loan?
A:    Yes.
Q:    Was this an arm's length transaction?
A:    Yes.
```

(Heptner Dep. June 16, 2005, Doc. # 33-1 at 11-13)(emphasis

added).   In addition, in the context of his divorce case,

Heptner filed a financial affidavit listing a mortgage as one

of his liabilities. (Id. at 21).

When approached by Freeman, Heptner "refused in a hostile

and angry way" to sign a mortgage in 2006. (Heptner Dep. Jan.

27, 2016, Doc. # 35-4 at 90). Eventually, ITS Billing sued

Heptner in a Hillsborough County, Florida state court lawsuit

under case no. 12-CA-18078, to compel Heptner to deliver a

signed purchase money note and mortgage. (Freeman Aff. Doc. #

33-1 at 4, ¶ 18). ITS Billing recorded a lis pendens in the

state court action on December 6, 2012. (Doc. # 42 at 2).

Thereafter, ITS Billing moved to strike Heptner's pleadings based on fraud on the court. (Doc. # 33-1 at 30).

After holding an evidentiary hearing, the state court granted the motion to strike Heptner's pleadings and entered a default against Heptner in an order dated October 31, 2013. (Doc. # 33-1 at 30-33). The state court found that Heptner's representations regarding receiving the purchase money for the Crosswater Property as compensation (as opposed to a loan) "are neither reasonable nor credible." (Id. at 33). The state court further found that Heptner gave "false sworn testimony designed to obtain an . . . advantage in [the] litigation" and that ITS Billing "met its burden by clear and convincing evidence that Heptner has sentiently set in motion an unconscionable scheme." (Id.).

On December 9, 2013, the date that a final hearing was set to take place in the state court, Heptner filed for bankruptcy protection under Chapter 13 of the United States Bankruptcy Code under case no. 8:13-bk-16055-CPM. The bankruptcy case was ultimately dismissed on October 17, 2014.

The state court litigation resumed and, on August 6, 2015, the state court entered its Second Amended Judgment (1) finding that Heptner defrauded ITS Billing; (2) ordering Heptner to vacate the Crosswater Property; and (3) compelling

Heptner to sign and deliver a purchase money note and mortgage within ten days. (Doc. # 33-1 at 36).  Among other detailed factual findings, the state court's August 6, 2015, order found:

> On June 6, 2005, Heptner agreed to, and the parties made, a purchase money note and mortgage in favor of ITS on the [Crosswater] Property.  The principal amount loaned to Heptner by ITS under the purchase money note and mortgage was $442,000, plus interest at the rate of 7% per annum, with a monthly payment of $2,940.64.

(Id. at 38).

The state court took note that "Heptner has occupied the Property for nearly 10 years and has not paid ITS one penny under the purchase money note and mortgage." (Id. at 39).  The state court ordered a judicial sale of the property to take place on August 24, 2015, but that sale has not taken place, to the Court's knowledge. (Id. at 43).  The state court "retain[ed] jurisdiction" over the case "to enforce th[e] amended final judgment." (Id. at 45). Nonetheless, Heptner did not comply with the state court's August 6, 2015 Order.

Accordingly, on August 31, 2015, the state court initiated criminal contempt proceedings against Heptner. In the context of those proceedings, Heptner agreed to sign, and did sign, a purchase money note and mortgage. Those documents have been filed with this Court. (Doc. # 35-7 at 26-64). The

9

note, executed on August 31, 2015, states that the "effective date" is June 6, 2005. (<u>Id.</u> at 26).  The presiding state court judge also signed the note and mortgage. (<u>Id.</u> at 29, 45).

On May 8, 2015, the IRS filed the present action against Heptner, Hillsborough County Tax Collector, TLGFY, LLC, Catalina Tax Co., LLC Series 1, ITS Billing, and Sweetwater Creek Property Owners Association, Inc. "to reduce to judgment unpaid federal income taxes owed by James M. Heptner and to foreclose federal tax liens that attach to real property located at 4105 Crosswater Drive, Tampa, Florida." (Doc. # 1).

Sweetwater Creek Property Owners Association, Inc., ITS Billing, Heptner, and the Hillsborough County Tax Collector filed Answers to the Complaint. (Doc. ## 3, 16, 21, 24).  Upon the IRS's application, the Clerk entered a Rule 55(a), Fed. R. Civ. P., default against Catalina Tax Co., LLC Series 1 and TLGFY, LLC. (Doc. ## 30, 31).  ITS Billing and the IRS have each filed Motions for Summary Judgment. (Doc. ## 33, 35). ITS Billing essentially argues that "ITS's purchase money mortgage is superior to the IRS lien" while the IRS maintains that its lien is superior to ITS Billing's lien because ITS Billing failed to perfect the mortgage lien in accordance with Florida law.

## II.  __Legal Standard__

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A factual dispute alone is not enough to defeat a properly pled motion for summary judgment; only the existence of a genuine issue of material fact will preclude a grant of summary judgment.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996) (citing Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 918 (11th Cir. 1993)).  A fact is material if it may affect the outcome of the suit under the governing law. Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997).  The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial.  Hickson Corp. v. N. Crossarm Co., Inc., 357 F.3d 1256, 1260 (11th Cir. 2004) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  "When a moving party has discharged

its burden, the non-moving party must then 'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593-94 (11th Cir. 1995) (citing Celotex, 477 U.S. at 324).

If there is a conflict between the parties' allegations or evidence, the non-moving party's evidence is presumed to be true and all reasonable inferences must be drawn in the non-moving party's favor. Shotz v. City of Plantation, Fla., 344 F.3d 1161, 1164 (11th Cir. 2003). If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, the court should not grant summary judgment. Samples ex rel. Samples v. City of Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988) (citing Augusta Iron & Steel Works, Inc. v. Employers Ins. of Wausau, 835 F.2d 855, 856 (11th Cir. 1988)). However, if the non-movant's response consists of nothing "more than a repetition of his conclusional allegations," summary judgment is not only proper, but required. Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981), cert. denied, 456 U.S. 1010 (1982).

12

III. **Analysis**

A.   **Judgment in Favor of the IRS on Tax Liability**

An assessment of federal tax by the IRS is presumed valid. United States v. Chila, 871 F.2d 1015, 1018 (11th Cir. 1989)("[A] Certificate of Assessments and Payments is presumptive proof of a valid assessment."). A taxpayer has the burden of overcoming the presumption of correctness by proving that the method of computing the tax, and therefore the assessment, is arbitrary and without foundation. Olster v. Comm'r of IRS, 751 F.2d 1168, 1174 (11th Cir. 1985).

Here, Heptner testified during his deposition that he had no proof that the assessments were incorrect. (Heptner Dep. Jan. 27, 2016, Doc. # 35-4 at 16). Although he vaguely claims that the proper procedures may not have been followed, he has "no idea" what policies are in question and certainly has not pointed to any evidence demonstrating that the assessments are arbitrary or without foundation. (Id. at 24). In addition, it should be noted that the assessments against Heptner were calculated based on returns Heptner himself filed.

The Court determines that the assessments are calculated correctly. The amounts of assessed and accrued interest and penalties for those liabilities are the product of an

13

operation of law. <u>See</u> 26 U.S.C. §§ 6621, 6622, 6651. The IRS has provided the computation of these amounts, and they are not reasonably subject to dispute. The Court accordingly directs the Clerk to enter Judgment in favor of the IRS and against Heptner in the amount of $250,829.14.

### B. <u>Priority of Tax Liens</u>

The IRS argues that federal tax liens attach to the Crosswater Property and that the Crosswater Property should be foreclosed in this suit. It is not disputed that Heptner became the owner of the Crosswater Property via warranty deed dated June 6, 2005. That deed has been filed in this case (Doc. # 35-5 at 26) and was recorded in the public records of Hillsborough County, Florida, on June 7, 2005. (<u>Id.</u>).

On September 28, 2004, prior to the purchase of the Crosswater Property, the IRS had filed a notice of federal tax lien in the official records of Hillsborough County, Florida against Heptner for the assessments made against him from 1993 through 1996, and 1999 through 2001. (Livingston Decl. Doc. # 35-2 at ¶ 13). A notice for those years was re-filed on December 30, 2013. (<u>Id.</u>). In addition, on December 18, 2014, the IRS filed a notice of federal tax lien in the official records of Hillsborough County, Florida against Heptner for

the assessments made against him for the years 2010 and 2012. (Id.).

A tax lien arises by operation of law upon the assessment of the tax and the failure by the debtor to pay upon demand. 26 U.S.C. §§ 6321, 6322.  At the time of the assessment, a tax lien attaches to all property belonging to the taxpayer. 26 U.S.C. § 6321.   The Supreme Court interpreted 26 U.S.C. § 6321 in United States v. National Bank of Commerce, 472 U.S. 713, 719-20 (1985), and explained that § 6321 "is broad and reveals on its face that Congress meant to reach every interest in property that the taxpayer might have."

The IRS argues, "because of the unpaid income tax assessments against Heptner, it is beyond dispute that federal tax liens attach to all of his property interests, wherever they are located, including his interest in the Subject Property." (Doc. # 35 at 12). "Absent provision to the contrary, priority [of IRS tax liens] for purposes of federal law is governed by the common-law principle that the first in time is the first in right." United States v. McDermott, 507 U.S. 447, 449 (1993).

ITS Billing asserts that such a "provision to the contrary" is applicable here.  Specifically, it contends that because ITS Billing has a purchase money mortgage, it has an

interest superior in priority to that of the IRS.  The Supreme Court has decreed: "A federal tax lien is subordinate to a purchase-money mortagee's interest notwithstanding that the agreement is made and the security interest arises after notice of the tax lien." Slodov v. United States, 436 U.S. 238, 259 (1978)(citing United States v. New Orleans R.R. Co., 20 L. Ed. 434 (1871)).

The IRS issued a revenue ruling formally pronouncing that federal tax liens are inferior to valid purchase money mortgages. That revenue ruling states: "[T]he Internal Revenue Service will consider that a purchase money security interest or mortgage valid under local law is protected even though it may arise after a notice of Federal tax lien has been filed." IRS Rev. Rul. 68-57.

Ample case law demonstrates that purchase money mortgages are entitled to super-priority, taking priority over federal tax liens. See e.g., First Interstate Bank of Utah, N.A. v. IRS, 930 F.2d 1521, 1523 (10th Cir. 1991)("[A] security interest based on the extension of purchase money defeats a previously filed federal tax lien."); First Nat'l Bank v. Lawyers Title Ins. Corp., No. 08-913, 2010 U.S. Dist. LEXIS 98155, at *10 (W.D. La. Aug. 12, 2010)("It is well established that a security interest based on the extension of purchase

16

money defeats a previously filed federal tax lien.");
<u>Bednarowski & Michaels Dev. LLC v. Wallace</u>, 293 F. Supp. 2d
728, 733 (E.D. Mich. June 16, 2003)("Federal law however, does
generally give priority to purchase money mortgages.  The
Supreme Court has held that a federal tax lien is subordinate
to a purchase money mortgage regardless of whether the
agreement was entered into before or after the filing of a tax
lien. Decisional law has long established that a purchase
money mortgagee's interest in the mortgaged property is
superior to antecedent liens prior in time and therefore, a
federal tax lien is subordinate to a purchase money
mortgagee's interest notwithstanding that the agreement is
made and the security interest arises after notice of the tax
lien.")(internal citations omitted).

Confronted with the application of its own revenue ruling
to denigrate the priority of its lien in this case, the IRS
asserts that ITS Billing is not entitled to super-priority
because it "failed to timely and properly perfect" its
mortgage under Florida law. (Doc. # 35 at 15).  It is
undisputed that ITS Billing has not recorded or otherwise
"perfected" its mortgage.  Nevertheless, the Court is not
persuaded that ITS Billing loses its priority under these
circumstances.  The applicable revenue ruling and other

17

decisional law require that a purchase money mortgage be "valid" and do not mention or require "perfection." IRS Rev. Rul. 68-57.

In addition, under Florida law, validity and perfection are two legally distinct concepts.  That is, a mortgage can be "valid" without having been "perfected."  As explained in In re Daniels, No. 09-10758-BKC-LMI, 2013 WL 655918, at *6 (S.D. Fla. Bankr. Feb. 22, 2013):

> There is nothing in Fla. Stat. § 697.01 that requires that, in order for a document to constitute a mortgage, it must be recorded. Fla. Stat. § 695.01 requires that any mortgage must be "recorded according to law" in order for the mortgage to "be good and effectual in law or equity against creditors or subsequent purchasers for a valuable consideration and without notice." Consequently, recording is required to protect a lien from innocent third parties; recording is not required in order for a lien to be created on the property.

Id.

Nevertheless, the IRS contends that ITS Billing's mortgage must be perfected to take priority over a federal tax lien, and relies upon United States v. Crissman, No. 4:09-cv-1884, 2011 WL 5374573, at *2 (M.D. Pa. Nov. 4, 2011). The Crissman decision states that "purchase money mortgages only have priority against federal tax liens to the extent that they are perfected or are valid under local law." Id.  In Pennsylvania, local laws require recording within ten days in

18

order for a mortgage to be valid.  However, this Court cannot apply the <u>Crissman</u> decision in this case because Florida does not have such a statute requiring that a mortgage be recorded in order to be valid.  In fact, the <u>Daniels</u> case explains that "recording is not required in order for a lien to be created on the property." <u>In re Daniels</u>, 2013 WL 655918, at *6.

The IRS also contends that genuine disputes of material fact preclude the entry of summary judgment in favor of ITS Billing: "Whether ITS Billing loaned James Heptner the funds used to purchase the [Crosswater] Property in this case and whether ITS Billing acquired a security interest in that property are disputed material facts." (Doc. # 36 at 1).  However, it is not disputed that ITS Billing provided the purchase money in this case at the closing in the form of a cashier's check in the amount of $430,825.99. (Doc. # 33-1 at 7). And, in the presence of a state court judge, Heptner signed and delivered a purchase money mortgage and note in favor of ITS Billing. (Doc. # 35-7 at 26-64).  The purchase money note and mortgage have been filed in this case and are before the Court.

Although the IRS states that it is not bound by the state court proceedings, the IRS does not argue that the mortgage and note are invalid.  The IRS comments that ITS Billing did

19

not acquire the note and mortgage simultaneously with the transaction, but Heptner admits that when he entered into the "arrangement that [he] had with Mr. Freeman," ITS Billing acquired a mortgage "at that time." (Heptner Dep. Jan. 27, 2016, Doc. # 35-4 at 121).

The applicable revenue ruling states that a purchase money mortgage takes priority over federal tax liens. The Court accordingly grants ITS Billing's Motion for Summary Judgment by finding that ITS Billing, the holder of a valid purchase money note and mortgage, has an interest in the Crosswater Property that is superior to the interest held by the IRS.

### C.   <u>Set-Off</u>

The IRS also indicates: "even if the Court determines that ITS has an interest in the [Crosswater] Property that is superior to the federal tax lien, it should not recover proceeds to the extent it has unpaid debt to the United States." (Doc. # 36 at 14). The IRS explains that it "has an inherent, common law right to setoff payments due to debtors for amounts those debtors owe it." (<u>Id.</u>) (citing <u>Capuano v. United States</u>, 955 F.2d 1427, 1429 (11th Cir. 1992)). According to the IRS, "ITS Billing admittedly owes the United States unpaid taxes for multiple years [and] . . . it would be

inequitable for ITS Billing to recover proceeds from the sale of the [Crosswater] Property to the detriment of the United States even if the Court determines that ITS Billing has a superior claim to that property." (Id.).

The IRS admits that it has not assessed tax liabilities, penalties, and interest as to ITS Billing and "the United States is unable to provide the Court with a precise computation of the total debt of ITS Billing." (Id. at 15). ITS Billing correctly responds that "it is not appropriate for the IRS to raise an entirely new issue at the eleventh hour, especially as a claim for offset when the IRS is the plaintiff in this case." (Doc. # 37 at 10). The Court agrees with ITS Billing that the issue of its own tax liabilities, which have yet to be calculated, is irrelevant to the present litigation. In the instance that the IRS determines that ITS Billing is a tax debtor, it should file a separate action against ITS Billing, not interject those claims into the present action, at the eleventh hour.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

(1) Plaintiff IRS's Motion for Summary Judgment (Doc. # 35) is **GRANTED IN PART** to the extent that the Clerk is directed to enter a Judgment in favor of the IRS and

against Heptner in the amount of $250,829.14.  However, the IRS's Motion is **DENIED** to the extent it argues that it has an interest in the Crosswater Property that is superior to the interest held by ITS Billing.

(2)  Defendant ITS Billing's Motion for Summary Judgment (Doc. # 33) is **GRANTED.**  The Court finds that ITS Billing has a purchase money note and mortgage which is superior to the IRS's federal tax lien.

(3)  The Clerk is directed to close the case.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this <u>15th</u> day of June, 2016.

_____
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

22